BROCK v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. November 6, 1906.)

No. 29.

BANKS AND BANKING—NATIONAL BANKS—PROSECUTION OF OFFICER FOR MIS-APPLICATION OF FUNDS.

Evidence that the cashier of a national bank overdrew his account, by means of checks which were not charged to his account, but carried in the drawer as cash and afterwards taken up by his note, all without the knowledge or consent of the board, is sufficient to warrant his conviction by a jury of misapplication of the bank's funds, in violation of Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497].

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

George S. Graham, for plaintiff in error.
Henry P. Brown, for the United States.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. This is a writ of error sued out by George P. Brock to the District Court for the Eastern District of Pennsylvania. Brock, who had been cashier of the Doylestown Na-

tional Bank, was indicted in that court under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], for willful misapplication of the moneys, funds, and credits of that institution. The jury found him guilty of this offense, and on entry of judgment and sentence he sued out this writ. The assigned errors now insisted upon are the court's refusal to admit a certain account in evidence and to give binding instructions for a verdict for defendant.

Apart from all other cases of alleged overdraft, we are of opinion the proofs bearing on five certain checks to which we now refer made the duty of the court clear to submit the case to the jury. On August 20, 1902, the defendant drew a check for $2,000 against his account in the Doylestown National Bank, of which he was then cashier, to the order of the First National Bank of Philadelphia (where he kept a personal account). This check was paid by the Doylestown Bank August 22. 1902, but was not charged to Brock's account. Had it been, it would have made an overdraft of $1,370.56. On September 2, 1902, he drew another check against his account to the order of the Consolidated Lake Superior Trustees (of some of whose stock he was an underwriter) for $4,000, and one to C. E. Wolbert, Treas. (who was treasurer of a silk company in which defendant was interested), for $6,400, which checks were paid by the bank September 4, 1902, but were not charged to his account. Had they, as well as the preceding check, been charged, they would have made an overdraft of $7,011.37. On September 15, 1902, he drew another check against his account to the order of C. E. Wolbert, Treas., for $1,250, which was paid by the bank September 17, 1902, but was not charged to his account. Had it, as well as the preceding checks, been charged, they would have made an overdraft of $8,351.25. On December 13, 1902, he drew a check for $2,000 against his account to the order of Ross, Morgan & Co. (a brokerage firm with which he had an account), which was paid by the bank December 16, 1902. It was not charged to his account. Had it, as well as the preceding checks, been so charged, they would have made defendant's overdraft $15,415.43.

On the part of defendant it was contended these checks were mere temporary advances made by him for bank customers who ordered securities bought; that as soon as the securities came the customers paid for them, and the money thus paid took up the checks, which had meanwhile been carried in the drawer as cash. When cross-examined, the defendant did not give the name of such customers or the amount paid by them, or specify any particular transactions. On the part of the government there was testimony tending to show that defendant was largely indebted to the bank on other loans, and that these check overdrafts were not known to or sanctioned by the board. Its contention was that these checks were not paid by customers as above stated, but were carried for several months in the drawer as cash, and that finally, on February 3, 1903, they were taken up by the defendant, giving his own note for them to the bank, without the knowledge or consent of the board. The defendant contended the note thus given was not for these checks, but was for an actual discount, the proceeds of which he received, but how he did not show, and that such note was discounted, and afterwards renewed, with the knowledge and consent of the board.

In corroboration of the government's contention, it was shown that the aggregate of these five overdraft checks, viz., $15,650, less a check for $4,650, dated January 31, 1903, given by Brock to the bank, made (making allowance for $90 discount) the exact amount of the note, viz., $11,090. It was also shown that on the stub of defendant's check book, opposite his check of $4,650, so given as above, the defendant had entered, "On ac. checks in drawer, Silk Lk. Sup. and 1st Ph. $4,650," which entries were alleged to refer to the overdraft checks above noted. Now, it is apparent that if the jury found these checks were not temporary advances for customers, but were overdrafts by the defendant himself and made without sanction, that they were carried as cash in the drawer and were finally taken up by the discount of an unauthorized note, they were warranted in finding that in making these overdrafts defendant had willfully misapplied the funds of the bank of which he was cashier. This the jury has done, and we are clear it was the duty of the court below, under the proofs, to deny the request of the defendant for a peremptory entry of a verdict of not guilty.

Further, we find no error in the action of the court in excluding the account of Ross, Morgan & Co. From the colloquy that followed its offer, it appears defendant desired its introduction for the twofold purpose of showing his account with that firm was not a speculative one and that he was a man of means, the owner of the collateral stocks which the account embraced. It will be noted that the objection made was to the account, standing alone, but not if properly proven. This we may fairly infer from the statement of the district attorney:

"If my friend wanted to make use of it [the account], let him call the witness, and ask questions, and identify it in the proper and regular way, so that we should have an opportunity to cross-examine."

There was no offer to do this, and the court then held the account was not competent, and added:

"I want it distinctly understood that I am ruling on the account itself, considered as an instrument of evidence offered now as a piece of paper."

There was no error in this ruling. There was no offer to further prove it, to show that defendant was the owner of the securities which it embraced, or even that they still remained in the broker's hands. But, apart from this, the court in its charge forcibly and clearly placed before the jury as uncontroverted facts all that defendant now contends they might have inferred from this account. In other words, while it excluded the account as not sufficiently proven, it gave the defendant the benefit of all and more than all that was offered to be proved by it. In charging, the court said:

"It is quite clear from the testimony that the defendant was not engaged in speculative purchases of stock during this period. There is no evidence that he was buying or selling any stocks at that time. He had an account with the brokers, Ross, Morgan & Co., which he was protecting. I do not clearly understand what the nature of that account was, but, as near as I can make out, he owed this firm some money; upon what account does not appear, as I recall the testimony; that he had put up with them a certain amount of collateral for the protection of that loan, and from time to time, on two or three occasions— I do not remember exactly how many, but two or three occasions—these securi-

ties that were up as collateral depreciated, some of them at least, and he was called upon to put up some money in order to protect the loan. There were no speculative purchases or sales of stocks during this period. That is quite clear."

After careful consideration, we find no error, and the judgment of the District Court must be affirmed.